FILED

NOV - 2 2022

MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIAM F.,

              Plaintiff,

   -v-

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

_____

20-CV-01293-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 14)

Plaintiff William F.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 9) is denied, and defendant's motion (Dkt. No. 12) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for SSI on July 25, 2017, alleging a disability onset date of November 9, 2016.  (Administrative Transcript ["Tr."] 168-73, 183).   The application was initially denied on September 22, 2017.  (Tr. 104-09).   Plaintiff timely filed a request for an administrative hearing.  (Tr. 110-25).   On June 3, 2019, Administrative Law Judge ("ALJ") John Loughlin held a video hearing from Alexandria, Virginia.  (Tr. 67-96).   Plaintiff appeared in West Seneca, New York, with counsel.  A vocational expert also testified at the hearing.  The ALJ issued an unfavorable decision on July 24, 2019.  (Tr. 46-65).  On July 17, 2020, the Appeals Council denied Plaintiff's request for review.  (Tr. 1-7).  This action followed.

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment

- 3 -

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B).  The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process."  20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).  First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity."  *Id.* §§404.1520(b), 416.920(b).  If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience."  *Id.* §§404.1520(b), 416.920(b).  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment."  *Id.* §§404.1520(c), 416.920(c).  To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  *Id.* §§404.1520(c), 416.920(c).  As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations.  *Id.*

- 4 -

§§404.1520(c), 416.920(c).  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations."  *Id.* §§404.1545(a)(1), 416.945(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is

not disabled.  *Id.*  §§404.1520(g)(1), 416.920(g)(1).  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform."  *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 30, 2017.  (Tr. 51).  At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; bipolar 1 disorder; depression; anxiety disorder; poly-substance abuse disorder; alcohol intoxication; post-traumatic stress disorder; and antisocial personality disorder.  (Tr. 51-52).  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 52-54).  Prior to proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c), except he could frequently stoop, kneel, crouch, and crawl; frequently climb stairs and ramps; occasionally climb ladders, ropes, and scaffolds; understand and remember simple instructions; make simple work-related decisions; carry out simple instructions; not perform work that requires a specific production rate such as assembly-line work or hourly quota work; occasionally deal with changes in a routine work setting; and occasionally deal with supervisors and co-workers, but not the public.  (Tr. 54-59).

- 6 -

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 59). At step five, the ALJ found that there exist other jobs in significant numbers in the national economy that Plaintiff could perform. (Tr. 59-60). Therefore, the ALJ found that Plaintiff was not disabled. (Tr. 60).

IV.    *Plaintiff's Challenge*

Plaintiff contends that remand is required here because the ALJ improperly evaluated Plaintiff's subjective complaints and because the RFC determination is not supported by substantial evidence.  The Court finds these contentions without merit.

The ALJ followed the governing regulations and identified substantial evidentiary support for his finding that Plaintiff's subjective allegations of pain and work-preclusive physical and mental limitations were not fully supported by the objective medical and other evidence in the record.  (Tr. 54-59).  Under the deferential substantial evidence standard of review, the Court is not permitted to reweigh the evidence and reach a different conclusion. *See Davila-Marrero v. Apfel*, 4 F.App'x 45, 46 (2d Cir. 2001) (When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder.") (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)).

A claimant's subjective description of his symptoms cannot alone establish disability. 20 C.F.R. § 416.929(a); Social Security Ruling (SSR) 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). Instead, the ALJ follows a two-step process for evaluating the claimant's subjective complaints of pain and other symptoms. *Id.* First, the claimant must provide objective medical evidence showing that a medical impairment exists, which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. 20 C.F.R. §

416.929(b). If the claimant meets this threshold obligation, the ALJ then considers the intensity and persistence of the claimant's pain or other symptoms, and the extent to which it affects his ability to work. 20 C.F.R. § 416.929(c).

As the fact-finder, "the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). A reviewing court must give great deference to the ALJ's weighing of the claimant's subjective testimony. *See Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010) ("[Courts] have no reason to second-guess the credibility finding…where the ALJ identified specific record-based reasons for his ruling."); *Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012) ("For purposes of our review, however, we have long held that "[i]t is the function of the [Commissioner], not ourselves, ... to appraise the credibility of witnesses, including the claimant.") (citing *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)). It is the ALJ, after all, who "has seen the hearing up close." *Biestek*, 139 S. Ct. at 1157.

Here, the ALJ carefully considered Plaintiff's subjective allegations, including his reports that he was in constant pain, felt uneasy in public, and experienced significant physical and mental limitations resulting from his impairments. (Tr. 55). The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but his subjective statements were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in

this decision." (Tr. 55). The ALJ then precisely explained the substantial evidentiary basis for his subjective complaint finding throughout the decision (Tr. 54-59).

First, the ALJ permissibly relied on the inconsistencies between the objective medical record and Plaintiff's extreme allegations to partially discount his testimony.  (Tr. 55-57). *See* 20 C.F.R. § 416.929(c)(2) (explaining that the ALJ will consider objective medical evidence when evaluating a claimant's alleged symptoms, including pain).  The ALJ explained that the objective medical evidence concerning Plaintiff's back pain did not fully support his complaints of constant physical pain with significant limitations in standing, walking, sitting, lifting, bending, stooping, and crouching.  (Tr. 55-57). The ALJ observed that Plaintiff's back pain was "treated relatively conservatively with medications" and he was "not a candidate for surgery."  (Tr. 56, citing Exs. 21F at 26-28; 30F; *see also, e.g.*, Tr. 398, 449, 1601). Moreover, the ALJ observed that Plaintiff failed to pursue physical therapy and a neurosurgical evaluation even though such treatment measures were repeatedly recommended.  (Tr. 56, citing Ex. 30F; *see also, e.g.* Tr. 451, 456, 1265-66, 1271, 1277, 1388, 1602).

The ALJ also explained that Plaintiff's objective diagnostic studies and physical examinations were not entirely consistent with his extreme allegations. (Tr. 55, citing Exhibits 9F, 11F, 12F, 12F, 13F, 14F, 21F, 23F, 24F, 30F; *see also, e.g.* Tr. 398, 415, 434-35, 448-49, 456, 1221, 1252, 1255, 1262, 1266-67, 1271, 1273, 1321, 1378-79, 1388, 1441, 1602). As the ALJ noted, a July 2017 lumbar spine MRI showed some abnormalities (Tr. 55, citing Exhibits 10F at 4; 30F at 10; Tr. 403), but February 2019 lumbar spine x-rays were normal. (Tr. 1253). Further, Plaintiff's examinations revealed few abnormalities other than some intermittent lumbar spine tenderness and positive

straight leg raising tests. *Id.* Otherwise, he routinely exhibited essentially normal objective physical findings, as the ALJ noted. *Id.* Plaintiff was in no acute distress with a normal gait, intact coordination, the ability to get on and off an examination table without assistance, nearly full or full range of motion in his extremities and spine, nearly full or full muscle strength, no muscle atrophy, intact sensation, and normal reflexes. *Id.* And, as the ALJ explained, Plaintiff even told a medical provider that "he works out regularly and feels he is quite fit and not in need of physical therapy" (Tr. 55, citing Exhibit 30F at 10; Tr. 1602).

The ALJ similarly explained that the objective medical evidence relating to Plaintiff's mental health disorders also was not fully consistent with his extreme allegations. (Tr. 56-57, citing Exhibits 16F, 17F, 24F, 27F, 28F; Tr. 1150-68, 1172-83, 1260-1527, 1534-89).   As the ALJ noted, Plaintiff's treatment involved individual outpatient therapy, medication management, and substance abuse rehabilitation, but he did not require inpatient psychiatric hospitalizations or experience periods of decompensation during the relevant period. *Id.* The ALJ explained that Plaintiff generally remained compliant with substance abuse rehabilitation protocols and medication management, and he was able to engage in therapy and keep most of his mental health appointments. *Id.* Records further showed that Plaintiff experienced a good treatment response with no adverse medication-related side effects. *Id.*; *see also* (Tr. 1212).

Further, the ALJ found that Plaintiff's relatively normal objective mental status findings did not fully support his extreme allegations. *Id.* As the ALJ discussed, Plaintiff routinely exhibited appropriate dress and grooming, intact recent and remote memory, coherent and logical thought processes, normal thought content, average fund of

knowledge, a cooperative and pleasant demeanor, intact eye contact, normal behavior, normal speech, intact attention and concentration, and fair to normal insight and judgment. *Id.* Plaintiff consistently denied suicidal ideations. *Id.* And, as the ALJ noted, Plaintiff was able to engage in conversations, answer questions appropriately, ask for medical help when needed, and attend appointments. *Id.*

In addition to relying on the discrepancies between the objective medical evidence and Plaintiff's testimony, the ALJ also relied on the non-medical evidence to partially discount Plaintiff's subjective complaints. (Tr. 56-57). *See* 20 C.F.R. § 416.929(c)(3) (ALJ may rely on daily activities to assess the claimant's symptoms). As the ALJ discussed, the record showed that Plaintiff cared for his personal needs and grooming, shopped in stores for groceries, played video games, used a cell phone, participated in social media, attended substance abuse meetings and medical appointments, listened to music, wrote poems, traveled to the beach, and spent time with friends and his fiancé. (Tr. 56-57, citing Exhibits 16F; 17F; 24F; Hearing Testimony; Tr. 88-89, 1159, 1584, 1587). Plaintiff also reported to medical providers that he completed a work program and was looking for employment (Tr. 1152), and that he had interviewed for a job as a restaurant cook (Tr. 1570).

The ALJ provided ample supporting rationale for his finding that Plaintiff's subjective complaints were "not entirely consistent with the medical evidence and other evidence in the record."  (Tr. 55). *See Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (summary order) ("The ALJ's Decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the

[ALJ] gave to the individual's statements and the reasons for that weight."); *Mongeur v. Heckler*, 772 F.2d 1033, 1040 (2d Cir. 1983) ("While it is not sufficient for the ALJ to make a single, conclusory statement that the claimant is not credible or simply to recite the relevant factors…remand is not required where the evidence of record permits [the Court] to glean the rationale of the ALJ's decision").  Further, the ALJ amply credited Plaintiff's subjective complaints by restricting him to medium work with postural and mental limitations. (Tr. 54-59). In doing so, the ALJ readily acknowledged that Plaintiff had significant work-related limitations, but simply did not agree that he was so impaired that he could not perform any work at all. *Id.* Plaintiff identifies no legal error in the ALJ's subjective complaint evaluation and the Court is not free to second guess the ALJ under substantial evidence review. *See Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (explaining that the Court must be careful not to "substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon de novo review.").

Moreover, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff retained the RFC to perform a range of medium work with postural and mental limitations.  The ALJ discussed in detail why the overall record supported the RFC finding but, in turn, did not support greater physical or mental work-related restrictions. (Tr. 54-59). Because the ALJ identified substantial evidentiary support for the RFC finding and provided a rationale for his fact-finding that permits meaningful judicial review, Plaintiff's challenges to the RFC finding must fail.

RFC refers to the most the claimant can still do despite his limitations. 20 C.F.R. § 416.945(a)(1). It is an administrative finding, not a medical opinion, which is reserved

exclusively to the ALJ as the fact-finder in the case. 20 C.F.R. § 416.946(c). The ALJ independently formulates the claimant's RFC based on all the relevant evidence, including the medical records, medical source opinions, and the individual's description of his limitations. 20 C.F.R. § 416.945(a)(3). In making the RFC finding, it is within the ALJ's discretion to resolve conflicts in the evidence. *See Reyna v. Comm'r of Soc. Sec.*, 2019 WL 4415142, at *5 (W.D.N.Y. Sept. 16, 2019) ("It was the ALJ's duty to assess all of the evidence, resolve any inconsistencies, and formulate an RFC finding that reflected all of Plaintiff's credible limitations."). The ALJ's findings regarding the claimant's RFC "need only afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence such that additional analysis would be unnecessary or superfluous." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (alterations omitted; internal quotation marks omitted).

The ALJ's decision precisely identified the substantial evidentiary basis for his RFC finding and permits meaningful judicial review. (Tr. 55-59). The ALJ explained that the RFC finding was supported by: (1) Plaintiff's unremarkable and routine treatment for back pain, which consisted of taking medications, with no pursuit of additional, recommended treatment measures such as physical therapy; (2) his conservative and effective treatment for his chronic substance abuse disorders and mental impairments, which consisted of individual outpatient therapy, medication management, and substance abuse rehabilitation with no need for inpatient psychiatric care; (3) Plaintiff's examinations, which routinely revealed unremarkable objective physical and mental status findings; (4) Plaintiff's own report that he worked out regularly and saw himself as a "fit" person; and (5) his daily activities, which included, in part, caring for his personal

needs, shopping in stores for groceries, attending substance abuse meetings, and spending time with his fiancé.  (Tr. 54-57).

After summarizing the evidence that supported the RFC finding, the ALJ then explained his rationale for the numerous limitations included in the RFC finding, as follows:

> It follows that in consideration of the claimant's symptoms associated with degenerative disc disease of the lumbar spine, bipolar 1 disorder, depression, anxiety disorder, poly-substance abuse disorder, alcohol intoxication, post-traumatic stress disorder, and antisocial personality disorder, and the record herein, the claimant can generally perform work at the medium exertional level. As the claimant has had some tenderness to his lumbar spine and positive straight leg raises, despite otherwise having full or near full range of motion and a normal gait, he can frequently stoop, kneel, crouch and crawl and can frequently climb stairs and ramps. As the claimant has had intact strength, no muscle atrophy, and intact coordination, he can occasionally climb ladders, ropes, and scaffolds. As the claimant has been able to understand health care instructions, remember his personal and health care history, [and has exhibited] an average fund of knowledge, and coherent thought process, he can understand and remember simple instructions, make simple work-related decisions, and carry out simple instructions. In an effort to not exacerbate the claimant's symptoms, but considering that he has been able to converse with others, had generally normal insight, intact concentration, and a normal affect, he cannot perform work which requires a specific production rate, such as assembly line work or hourly quota work and can occasionally deal with changes in a routine work setting. Accepting the claimant's statements regarding uneasiness in public and in groups, but noting that the claimant has been cooperative with health care providers and able to enter the community for various activities, he can occasionally deal with supervisors and co-workers, but not the public.

(Tr. 57-58). Thus, the ALJ provided an adequate basis for meaningful judicial review, applied the proper legal standards, and identified substantial evidentiary support for the RFC finding. *McIntyre v. Colvin*, 758 F.3d at 150.

Plaintiff argues that the ALJ's RFC finding is erroneous because the ALJ found that the work-preclusive mental limitations suggested by his treating psychiatrist were not persuasive, and the ALJ did not base the RFC finding on any particular medical opinion,

- 14 -

thereby creating an evidentiary gap in the record.  The Court finds this argument without merit.

First, there is no merit to Plaintiff's argument that the ALJ improperly considered the checkbox disability statement of his treating psychiatrist, Viktor Yatsynovich, M.D., who suggested, in part, that Plaintiff was "unable to meet competitive standards" and had "no useful ability to function" in most areas of mental work-related functioning. (Tr. 58, 1212-16).  Contrary to Plaintiff's argument, the ALJ considered Dr. Yatsynovich's checkbox form and articulated why he found it not persuasive, citing legally valid reasons that were supported by the record and conformed to the applicable regulations. (Tr. 58).  *See* 20 C.F.R. § 416.920c (explaining how ALJs consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017).

The ALJ explained that, in late October 2018, approximately three months before he completed the January 2019 checkbox medical source statement, Dr. Yatsynovich opined that Plaintiff "can work as much as he is able to tolerate, no restrictions from our office." (Tr. 58, citing Exhibit 17F at 12; Tr. 1181).  The ALJ observed that Dr. Yatsynovich's statements were therefore "directly contradictory of one another." (Tr. 58). The ALJ also explained that Dr. Yatsynovich's checkbox disability statement was "not supported by statements with bases in the record." (Tr. 58, 1212-16).  *See* 20 C.F.R. § 416.920c(c)(1) (explaining that medical opinions that are supported by relevant objective medical evidence and supporting explanations are more persuasive).  In fact, not only did Dr. Yatsynovich fail to provide a supporting explanation, he indicated on the same checkbox form that Plaintiff experienced a good response to both pharmacotherapy and individual therapy, and had no adverse medication-related side effects. (Tr. 1212). Thus,

Dr. Yatsynovich's own statements about Plaintiff's favorable treatment response arguably undercut the substantial limitations he proposed.  (Tr. 1212-16).

The ALJ also found that Dr. Yatsynovich's checkbox statement was "not consistent with his own assessments or his other opinion." (Tr. 58). *See* 20 C.F.R. § 416.920c(c)(2) (explaining that medical opinions that are more consistent with the other evidence in the claim are more persuasive).  The ALJ explained that the record showed that Plaintiff was able to engage in therapy and keep most of his mental health appointments, and his mental status findings revealed largely normal findings, including cooperative and pleasant behavior and a logical and coherent thought process.  (Tr. 58, citing Exhibits 11F, 12F, 13F, 16F, 17F, 21F, 24F, 28F). Accordingly, because the ALJ's analysis of Dr. Yatsynovich's checkbox disability statement conformed to the applicable regulations and was supported by substantial evidence, Plaintiff's claim of error cannot stand.  (Tr. 58). *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) (explaining that the trier of fact has the duty to resolve "the not uncommon situation of conflicting medical evidence.").

Next, because the ALJ found Dr. Yatsynovich's disability statement was not persuasive and a record-reviewing state agency medical consultant found insufficient evidence to evaluate the claim (Tr. 58, citing Exhibit 1A; Tr. 99-101), Plaintiff argues that there was an evidentiary gap in the record and the ALJ's RFC finding was defective because it was not supported by any particular medical opinion. This argument is without merit.

No statutory or regulatory provision requires an ALJ to adopt a medical opinion or prior administrative medical finding when making the RFC finding. On the contrary, the responsibility for assessing the claimant's RFC rests exclusively with the ALJ. 20 C.F.R.

§ 416.946(c). The ALJ considers "all of the relevant medical and other evidence," not just medical opinions, when formulating the RFC finding. 20 C.F.R. § 416.945(a)(3).

Consistent with the governing federal regulations, the Second Circuit has recognized that there is no requirement that the ALJ's RFC finding mirror a medical opinion in the record. *Matta v. Astrue*, 508 Fed App'x 53 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusions may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). Indeed, a medical source statement or formal medical opinion is not required where, like here, the record contains sufficient evidence for the ALJ to assess the claimant's RFC. *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 9 (2d Cir. 2017) (citing *Pellam v. Astrue*, 508 Fed.Appx. 87, 90 (2d Cir. 2013) (summary order) (upholding ALJ's RFC determination where he "rejected" physician's opinion but relied on physician's findings and treatment notes)). The regulations make clear that the ALJ is not required to defer to any medical opinion. *See* 20 C.F.R. § 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.").

Because the ALJ was not required to defer to any medical opinion when formulating the RFC finding, Plaintiff's suggestion that there is an evidentiary gap in the record warranting remand lacks merit and must be rejected. *See Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) ("where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits

claim."); *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996) (the ALJ is not required to obtain additional evidence when the record is "adequate for [the ALJ] to make a determination as to disability."); *Bliss v. Comm'r of Soc. Sec.*, 406 F.App'x 541, 542 (2d Cir. 2011) ("[T]he ALJ need not involve medical sources or claimant's counsel in his deliberative process or assessment of the evidence.").

In the end, consistent with the governing regulations and Second Circuit authority, the ALJ properly considered whether the medical opinions and prior administrative medical finding in the record were persuasive, but then independently fashioned Plaintiff's RFC based on the totality of the evidence.  (Tr. 54-59). The ALJ was entitled to weigh all the available evidence to reach an RFC finding that was consistent with the record as a whole, even if it did not perfectly correspond with any medical opinion. 20 C.F.R. § 416.927(d)(2); 20 C.F.R. § 416.945(a)(3); *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018); *Matta v. Astrue*, 508 F. App' x at 56. Because the ALJ provided an adequate basis for meaningful judicial review, applied the proper legal standards, and identified substantial evidentiary support for the RFC finding, this Court must defer to the ALJ's fact-finding about Plaintiff's RFC and affirm the ALJ's decision.

## <u>CONCLUSION</u>

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is denied and defendant's motion for judgment on the pleadings (Dkt. No. 12) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      November 1, 2022
                Buffalo, New York

                                                MICHAEL J. ROEMER
                                                United States Magistrate Judge